

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 12, 2019

**BY ECF**

The Honorable Gabriel W. Gorenstein
Chief United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Therese Okoumou, 18 Cr. 469 (GWG)

Dear Judge Gorenstein:

      The Government respectfully submits this letter in advance of sentencing of Therese Patricia Okoumou (the "Defendant"), currently scheduled for March 19, 2019 at 9:30 a.m. For the reasons explained below, the Government submits that a sentence of at least thirty days' imprisonment, followed by three years' probation, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A. Offense Conduct**

      On July 4, 2018, the Defendant scaled the outside of the Statue of Liberty (the "Statue"), climbing from the observation pedestal onto the base of the Statue, where she remained for over three hours. Presentence Investigation Report ("PSR") ¶ 8. As the Defendant climbed, and while she was on the base of the Statue, uniformed members of the U.S. Park Police ("USPP") and New York City Police Department's Emergency Service Unit ("NYPD ESU") repeatedly ordered the Defendant to come down, but she refused. PSR ¶ 9.

      As part of their emergency-response efforts, NYPD ESU detectives ascended a 24-foot ladder, initially without a harness securing them to a high-point. PSR ¶ 11. As the detectives ascended, the Defendant threatened to push the ladder down, though she did not take any actions to do so. *Id.* Later, once the detectives were secured to a rope attached to the Statue's crown, they climbed onto the base of the Statue. *Id.* As the detectives approached, the Defendant retreated farther away, even trying to climb higher on the Statue. *See id.*

      The Defendant's climb took place while other visitors were on the observation pedestal. PSR ¶ 12. In response to the Defendant's actions, the USPP immediately evacuated the observation pedestal and Fort Wood area below, and subsequently evacuated all of Liberty Island. Approximately 4,331 people were evacuated in total. PSR ¶ 13.

**B. Procedural History and PSR**

On December 17, 2018, following a bench trial, Your Honor found the Defendant guilty on Counts One, Two, and Three of the Information, charging the Defendant with trespassing, interfering with agency functions, and disorderly conduct, in violation of Title 18, United States Code, Section 1865, and Title 36, Code of Federal Regulations, Sections 2.31(a)(1), 2.32(a)(1), and 2.34(a)(4).

On March 7, 2019, the United States Probation Department issued the PSR, which recommended that the Court sentence the Defendant to three months' imprisonment, followed by one year of supervised release.

**C. Discussion**

    **1. Applicable Law**

Each of the counts of conviction is a Class B misdemeanor, and carries a maximum sentence of six months' imprisonment, a maximum fine of $5,000, or both. *See* 18 U.S.C. §§ 1865(a) (prescribing the penalties for violating National Park Service regulations, specifically, a maximum of six months' imprisonment, a fine under Title 18, or both), 3571(b)(6) (prescribing a fine of up to $5,000 for Class B misdemeanors), 3559(a)(7) (defining Class B misdemeanors as those offenses for which the maximum term of imprisonment is six months or less but more than thirty days).

The counts of conviction, as Class B misdemeanors, are also considered petty offenses. 18 U.S.C. § 19. Courts have interpreted 18 U.S.C. § 3583(b)(3)[1] to preclude the imposition of a term of supervised release following imprisonment for a petty offense. *See United States v. Donovan*, No. 04 Cr. 1346 (MHD), 2005 WL 1322715, at *2 n.4 (S.D.N.Y. May 2, 2005) ("Our reading of 18 U.S.C. § 3583(b)(3) suggests . . . that supervised release is not available here, since this case

---

[1] The statute provides:

> **(a) In general.**--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .
>
> **(b) Authorized terms of supervised release.**--Except as otherwise provided, the authorized terms of supervised release are--
>
> **(1)** for a Class A or Class B felony, not more than five years;
>
> **(2)** for a Class C or Class D felony, not more than three years; and
>
> **(3)** for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

18 U.S.C. § 3583(a)–(b). The PSR relies on the general language in § 3583(a) as providing a basis for the imposition of supervised release here. PSR ¶ 62.

involves a petty offense and the cited provision explicitly excludes petty offenses from its coverage."); *see also United States v. Thornton*, 225 F.3d 665 (9th Cir. 2000) (table decision); *United States v. Jourdain*, 26 F.3d 127 (8th Cir. 1994) (per curiam, table decision).

However, the Court may impose a term of probation of up to five years for a misdemeanor. 18 U.S.C. § 3561(c)(2). In addition, the Court may impose both a term of imprisonment and probation for a petty offense. *See* 18 U.S.C. § 3561(a)(3) ("A defendant who has been found guilty of an offense may be sentenced to a term of probation unless— . . . (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."); *United States v. Posley*, 351 F. App'x 807, 809 (4th Cir. 2009) (per curiam) ("Unquestionably, the magistrate judge had the statutory authority under § 3561(a)(3) to sentence [the defendant, convicted of a Class B misdemeanor,] to a term of six months of continuous imprisonment plus probation.").

A sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1)–(7); *see also id.* § 3562(a) (providing that Courts must consider the § 3553(a) factors in determining whether to impose probation, and if so, the duration and conditions of such probation). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The United States Sentencing Guidelines are not applicable to Class B misdemeanors, and therefore do not apply in this case. U.S.S.G. § 1B1.9 (2018).

**2. Analysis**

The sentencing factors applicable here require, among other things, balancing the nature and seriousness of the offense and the need to deter the Defendant specifically from continuing to commit similar crimes, with the individual characteristics of the Defendant. The Government respectfully submits that balancing these factors strongly supports a sentence of incarceration, and that a sentence of at least thirty days' imprisonment followed by three years' probation is both sufficient and not greater than necessary to accomplish the purposes of sentencing.

First, the Defendant's conduct was a serious violation of law, principally because her actions put herself, members of the public, and members of law enforcement in danger. Scaling the Statue—climbing the face of the observation pedestal wall, pulling herself onto the base of the Statute, and then walking on the uneven, slippery copper surface of the Statute's base, at least 133 feet above the ground—self-evidently put the Defendant herself in grave danger. While the Defendant was apparently willing to undertake that risk, the law is appropriately concerned not just with the harm done to others, but also harm (and risk of harm) to oneself.

The danger the Defendant created was not limited to herself, however. Her climb also put members of the public at risk, in two ways. Initially, there was a risk that the Defendant could have fallen on to other members of the public—either those standing on the observation pedestal or, if the Defendant had fallen past the narrow pedestal, those standing on top of Fort Wood. The defense is correct that the risk of the Defendant falling onto other members of the public was removed once the USPP judiciously evacuated the observation pedestal and Fort Wood areas. Yet the evacuations of those areas, and subsequently the entire island, in response to the Defendant's actions created additional hazards, as large numbers of people, many speaking different languages, moved rapidly away from the Statue and cleared the way for law enforcement to respond.

The Defendant's conduct also put law enforcement in danger. Despite members of the USPP and NYPD ESU repeatedly directing and trying to convince the Defendant to come down on her own, and telling the Defendant that they would have to retrieve her if she did not comply, the Defendant remained on the base of the Statute for over three hours. For a portion of that time, NYPD ESU detectives were standing on a steeply angled ledge while talking to the Defendant. While there, the detectives were not secured to a high-point. Then, even after the detectives were secured to a rope line attached to the Statue's crown and climbed up to the base of the Statue, the danger remained. As the detectives approached, the Defendant moved farther away from them, even trying to climb higher on the Statue. The Defendant's evasion required more slack in the rope to permit law enforcement to reach her. More slack in the rope meant that if they had slipped on the uneven surface, the detectives would have had farther to fall.

Second, the Defendant's offense conduct, and conduct since, demonstrate a disrespect for law and, accordingly, the need for specific deterrence. As recounted above, the Defendant's offense conduct included repeated disregard of lawful orders to come down. Furthermore, as the NYPD ESU detectives initially climbed the ladder, the Defendant threatened to push the ladder down, a threat she fortunately did not act upon. Finally, as NYPD ESU detectives approached her on the Statue, the Defendant continued to evade them, making their job more difficult and dangerous in the process.

On top of the Defendant's actions on the Fourth of July, her pattern of behavior and public declarations of intent to continue with similar unlawful actions demand a sentence that is calibrated to adequately deter the Defendant from committing additional crimes. At the outset, the instant offense was committed within three months of the Defendant receiving an adjournment in

contemplation of dismissal for a state arrest. *See* PSR ¶ 23.[2]  In addition, notwithstanding her arrest at the Statue of Liberty, the Defendant has conducted at least three additional climbing stunts.  Just prior to trial, in late November 2018, the Defendant twice climbed the Eiffel Tower in Paris, France, causing the tower to be evacuated and the Defendant to be arrested.  PSR ¶ 24.[3]  Then, following her conviction by this Court, the Defendant climbed onto the roof and exterior staircase of the Southwest Key Headquarters building in Austin, Texas, where she remained for approximately eight hours.  The Defendant was again arrested, and charges are pending.  PSR ¶ 22.

The Defendant's public statements confirm what her actions clearly demonstrate: that the Defendant intends to continue to break the law by climbing.  As recently as March 1, 2019, just hours before the bail revocation hearing conducted before Your Honor, the Defendant gave an interview in which she explained why she continues to climb: "That's how I do my activism.  I climb things.  It's innate in me."[4]  The Defendant, of course, has the right to continue to engage in activism, to participate in and comment upon issues of public concern, to criticize government policy and seek to change it.  However, she does not have a right to break the law and place others in danger to get her message across.  The Court's sentence must be sufficient to overcome the Defendant's determination not to heed the appropriate and legal boundaries of protest, and to deter her and anyone who might seek to emulate her from committing similar crimes in the future.

At the same time, the Government acknowledges certain mitigating individual characteristics of the Defendant.  Specifically, according to the Defendant's testimony, her actions were motivated by intense emotional pain in response to federal immigration policy's impact on children and her desire to advocate on behalf of the children.[5]  It is appropriate for the Court to consider for sentencing the role of the Defendant's emotional state in her behavior, and her

---

[2] The Assistant District Attorney who handled the case has informed the Government that the Defendant was required to do three days of community service in connection with the ACD.

[3] *See also* (Official) Patricia Okoumou (@POkoumou), TWITTER (Nov. 28, 2018, 5:02 AM), https://twitter.com/POkoumou/status/1067765626247233541 ("I had the #EiffelTower evacuated in solidarity with asylum seekers on #Thanksgiving; yet, the media didn't pick up on the story. . . . How about we do it encore? [sic]"); (Official) Patricia Okoumou (@POkoumou), TWITTER (Nov. 28, 2018, 6:08 PM), https://twitter.com/POkoumou/status/1067963530274586624 ("This is my #pressrelease #mediaadvisory: I am climbing the #EiffelTower tomorrow 11/29/18."); (Official) Patricia Okoumou (@POkoumou), TWITTER (Dec. 1, 2018, 2:28 PM), https://twitter.com/POkoumou/status/1068995335450763265 (posting picture of text stating "both of my actions with #frenchpolice did evacuate the #EiffelTower," and stating that the Defendant was "incarcerated and institutionalized in psych wards").

[4] Democracy Now!, *Activist Faces Prison for Climbing Statue of Liberty & Southwest Key HQ to Protest Family Separation*, YOUTUBE, https://www.youtube.com/watch?v=NLkO3U1AVXw, last accessed March 10, 2019 (quoted statement at timestamp 3:27).

[5] *See* Dkt. 39 ("Trial Tr.") at 92:10-17 (testifying that she was "outraged" and still "upset" and was "trying to do [her] best for the children"), 95:20-21 (testifying that she had nightmares and night sweats and "couldn't live with it").

motivation to act in accordance with principle, as opposed to other criminal motivations such as a desire to inflict harm on others or to obtain financial gain at others' expense to satisfy selfish greed.

But the degree of mitigation here is limited. These considerations do not excuse or justify the Defendant's violations of law. Moreover, her stated desire to advocate for others must be considered alongside her decisions, at numerous points, to act in ways that created and aggravated readily foreseeable risks to others.

Finally, contrary to the Defendant's contention, the imposition of incarceration in this case would not create unwarranted sentencing disparities. Notably, the defense overlooks a critical detail regarding the sentence of Alberto De Jesus Mercado, a/k/a "Tito Kayak," whose case the Defendant cites in her sentencing submission. The district court stated explicitly that the sentence imposed of time served was based on the fact that De Jesus had already been sentenced to one year's imprisonment in the District of Puerto Rico as a result of his climbing on the Statue of Liberty while on federal probation. *See United States v. De Jesus Mercado*, No. 01 Cr. 132 (S.D.N.Y.) (MHD), Dkt. 20 at 17:3-7 ("[Y]ou are now serving a one-year prison term for violation of probation that followed . . . for substantially the reason that you were convicted here, for trespass on the Statue of Liberty."), 18:15-24 ("In this case, . . . bearing in mind all of the circumstances, the length of the sentence that was imposed by the District Court in Puerto Rico, in my view, satisfies substantially all of the interests to be served by any incarceration in this case.").[6]

Regardless, the particular offense conduct of this Defendant, and her pattern of behavior, warrant a sentence of incarceration. The Defendant's actions on the Fourth of July were designed to be dangerous and unlawful. The Defendant could have lessened the hazards to law enforcement by coming down from the Statue on her own. She did not. Her behavior since her arrest, and especially since her conviction, has shown flagrant disregard for the law and for the Court. A sentence of incarceration followed by probation strikes the appropriate balance to provide just punishment for the Defendant's past behavior and deterrence for the Defendant's future conduct, and ensures that the Court has ongoing authority to enforce the Defendant's compliance with Federal, state, and local law in the future.

In sum, a sentence of at least thirty days' imprisonment, followed by three years' probation, would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

---

[6] Prior to climbing the Statue of Liberty, De Jesus was convicted in the District of Puerto Rico on two counts of trespass and one count of simple assault for trespassing onto a military installation on the island of Vieques, Puerto Rico. The District Court in Puerto Rico initially sentenced him to time served (approximately 34 days) and one year of probation. De Jesus then violated his probation by traveling to New York and climbing the crown of the Statue of Liberty, and by returning to Vieques at least twice in contravention of an express term of his probation. The District Court in Puerto Rico then sentenced him to one year's imprisonment for the probation violations. *See United States v. De Jesus*, 277 F.3d 609, 611 (1st Cir. 2002).

**D. Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of at least 30 days' imprisonment, followed by three years' probation.

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney for the
                    Southern District of New York

By: _____
     Brett M. Kalikow
     Assistant United States Attorney
     (212) 637-2220

cc:    Ronald L. Kuby, Esq. (by ECF)
        Rhidaya "Rhiya" Trivedi, Esq. (by ECF)

        USPO Stephanie M. McMahon, United States Probation Office (by e-mail)